**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3777-23

47 MERCER STREET LLC,
and 78 SUMMIT AVENUE
PARTNERS LLC,

     Plaintiffs-Respondents,

v.

78 SUMMIT AVENUE JC,
LLC, and TRACY ERRICO,

     Defendants-Appellants.

_____

Argued February 12, 2025 – Decided March 12, 2025

Before Judges Sumners and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4219-21.

Michael Confusione argued the cause for appellants (Hegge & Confusione, LLC, attorneys; Michael Confusione, on the briefs).

Daniel A. Lebersfeld argued the cause for respondents (Genova Burns LLC, attorneys; Jennifer Borek, of

counsel; Daniel A. Lebersfeld, of counsel and on the brief).

PER CURIAM

On leave granted, defendants 78 Summit Avenue JC, LLC and Tracy Errico appeal a trial court order suppressing their answer and responsive pleadings with prejudice for failure to provide discovery. Because we conclude the trial court's sanction suppressing defendants' pleadings with prejudice was based on credible evidence in the record of their repeated non-compliance in providing discovery and was not an abuse of discretion, we affirm.

I.

In July 2018, plaintiff 47 Mercer Street, LLC and defendant 78 Summit Avenue JC, LLC executed a contract to purchase an apartment building (property) located at 78 Summit Avenue, Jersey City, for $5,000,000. The closing occurred in September 2019. As part of the sales purchase agreement, defendant warranted that there were no "[h]azardous [m]aterials on, under, at, emanating from or affecting the [p]roperty." "Hazardous Materials" were defined in the contract as including "any regulated substance, toxic substance, hazardous waste, pollutant or contaminant defined or referred to in the [e]nvironmental [l]aws."

A-3777-23

During the due diligence period permitted by the agreement, plaintiffs were provided access to the property to perform routine and customary inspections through 78 Summit's superintendent, Jamal Phillips. Phillips informed plaintiffs he had intimate knowledge of the property because he worked for defendants during the time the property was being renovated in 2017. He informed plaintiffs there were no known environmental issues affecting the property. Phillips showed plaintiffs various apartments during the inspection, including apartment 101 where he resided.

However, after the closing Phillips contacted plaintiffs to inform them there were issues with his apartment, including serious mold issues. Phillips informed plaintiffs that although these issues were known to him and defendants, defendants instructed him to conceal the mold issues from plaintiffs during the inspection. He stated he complied with this request out of fear of being terminated if the mold issues caused the sale to fall through. Specifically, Phillips stated that he had informed Errico, the property manager, of the issues months prior to the closing. Phillips informed plaintiffs that Errico instructed him to clean up the mold in his apartment prior to plaintiffs' site inspection and to not say anything that would interfere with the closing. Phillips also divulged that defendants purchased a dehumidifier to alleviate the moisture issues and

that he had scrubbed his apartment before the inspection of the property to avoid plaintiffs discovering the mold.

Plaintiffs filed their lawsuit against 78 Summit on October 29, 2021, alleging breach of contract, common law fraud, unjust enrichment, breach of the covenant of good faith and fair dealing, and violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228.

In April 2022, plaintiffs served 78 Summit with their first set of interrogatories and request for production of documents. Defendants failed to provide responses to the requests and plaintiffs moved to compel 78 Summit to provide responses to discovery. The court granted plaintiffs' motion by order of October 7. On October 18, 78 Summit provided certified responses to plaintiffs' first set of interrogatories and first request for production of documents, in accordance with the October 7 order. Plaintiffs advised defendants their responses were insufficient in a January 19, 2023 letter. Defendants responded and partially addressed plaintiffs' requests, but also claimed most of their responses were sufficient.

After failing to resolve their discovery disputes, on February 16, plaintiffs moved to suppress 78 Summit's answer and defenses, asserting that it had failed

to comply with the October 7, 2022 order compelling discovery. The court denied plaintiffs' motion on non-substantive grounds by order of March 3.

On March 13, plaintiffs again moved to suppress 78 Summit's answer for failure to provide discovery, or alternatively, to compel discovery for failure to comply with the court's October 7, 2022 order. On April 14, 2023, the court granted plaintiffs' motion and entered an order suppressing 78 Summit's answers and defenses without prejudice.

On May 1, plaintiffs filed the second amended complaint which named Errico as a defendant. In the second amended complaint, plaintiffs alleged that defendants affirmatively concealed mold damage in the property. On June 14, plaintiffs served Errico with their first set of interrogatories and request for production of documents. On August 23, plaintiffs moved to compel discovery from Errico. The court granted the motion against Errico on September 8.

On October 4, plaintiffs filed another motion to suppress 78 Summit's answer and defenses with prejudice and enter default for failure to comply with the October 7, 2022 order to provide discovery. On October 20, prior to deciding the motion, the trial court scheduled a case management conference for November 8 to discuss all purportedly outstanding discovery responses from defendants.

A-3777-23

On November 9, after the case management conference was held, the trial court entered a case management order requiring each party serve the other with a "punch list" of outstanding discovery by November 13, with responses to be served by November 20. Further, plaintiffs' motion to suppress was adjourned to December 15, with oral argument set for the same date.

On November 20, defendants provided responses to the "punch list" in accordance with the case management order. The responses stated that no documents were retained by Errico relating to payments or salary she received as 78 Summit's property manager. Further, the responses stated she did not have any communications or documentation in her possession pertaining to the property, the sale, mold, leaks or other issues at the property. In response to questions concerning whether any documents had been lost, deleted or destroyed, defendants responded, "[n]ot to my knowledge."

Plaintiffs filed another motion on November 29, requesting the court to suppress Errico's responsive pleadings for her failure to provide discovery. The court set a return date of December 20 to hear plaintiffs' motions to suppress defendants' responsive pleadings with prejudice. Defendants' opposition claimed they had provided responses in accordance with the punch list the court had ordered.

6

The court heard oral argument on the motions to suppress on December 20. The court granted plaintiffs' motions and suppressed Errico's responsive pleadings without prejudice and 78 Summit's responsive pleadings with prejudice for failure to provide discovery. The court found:

> Pursuant to [Rule] 4:23-5(a)(1), [Rule] 4:23-2(b) and for the reasons set forth on the record [d]efendant Tracy Errico has repeatedly failed to fulfill her discovery obligations required by the Rules of Court and [c]ourt [o]rder. Defendant Tracy Errico has failed to conduct a proper search of her records to respond to [p]laintiffs' discovery requests, failed to answer the interrogatories for Tracy Errico, and gave evasive testimony at deposition. Defendants' response by way of written answers to the incorrect interrogatories should have been cured at the time [d]efendant was notified in October that she responded to the wrong interrogatories.

As to the 78 Summit, the court found:

> Pursuant to [Rule] 4:23-5(a)(2), [Rule] 4:43-1, and for the reasons set forth on the record on 12/20/23 [d]efendant 78 Summit Avenue Partners JC, LLC failed to comply with the [c]ourt's case management order entered on November 9, 2023, which included a punch list or highlighted specific requests of any outstanding paper discovery to be served by November 13, 2023, answers to the punch list or highlighted requests of any outstanding paper discovery to be provided by November 20, 2023, and depositions of existing parties' fact witnesses to be conducted by December 1, 2023. Defendants did not fulfill their discovery obligations as identified on the record. More specifically, [d]efendants, for the first time during oral argument,

7

identified three banks that [d]efendants had failed to identify in interrogatories or supplemental interrogatories for [p]laintiffs.

On December 22, the court entered default against 78 Summit. Previously, on December 21, Errico had filed a motion for reconsideration of the court's December 20 order and also moved to reinstate her responsive pleadings. She provided the following with her motion: (1) documents received by the City of Jersey City in response to plaintiffs' request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13; (2) a letter sent to certain banks that 78 Summit believed it may have used during its operation of the property; and (3) an IRS Form 4506 Request for Copy of Tax Return dated December 11, 2023.

On January 25, 2024, while Errico's motion to reinstate was pending, she submitted a supplemental certification which further detailed her compliance with plaintiffs' discovery requests. This resulted in the court setting a case management conference before a different judge on February 8. The court reviewed each of plaintiffs' requests and defendants' answers in detail, focusing on the "punch list" of deficient responses previously provided to the court. The court pointed out several deficiencies with respect to the specific "punch list"

responses. Notably, the court explained defendants' answers which contained "no recollection at this time" was not a responsive answer to the questions.

Further, defendants argued that they followed the prior court's directive, compiling a collective response from 78 Summit and Errico. The court responded, "there is no such thing as a collective response." The court explained even if it previously directed them to make a collective response to the punch list, Errico should still answer the questions or object to them, which she failed to do, therefore she is required to answer separately. Defendants argued the questions were answered by way of the certification executed by William Melms.[1] The court explained if Errico certified she read and agreed with everything Melms provided, he would agree " [one-hundred] percent with what he said . . ." The court then went through several of defendants' responses and found them insufficient.

On February 12, defendants provided amended answers to the punch list, certified to by Melms on behalf of 78 Summit and Errico. Defendants also moved to reinstate their responsive pleadings. On March 6, the court held oral argument, and determined defendants still had failed to provide fully responsive

---

[1] William Melms signed the certification for 78 Summit's discovery responses in his representative capacity as a member of 78 Summit.

answers and denied the motion to restore. The court found defendants' responses were deficient, noting the impropriety of raising objections, reserving their right to amend answers, insufficient responses, and not providing answers/documents for requested time frames. In addition, the court pointed out that defendants' objections to numerous requests were improper given that "[t]he time to object to the written discovery is long gone."

On May 8, plaintiffs moved to enter default against both defendants.[2] Plaintiffs also moved to suppress the answer of Errico with prejudice, citing the same insufficient discovery grounds. On May 28, defendants cross-moved to reinstate their responsive pleadings. Defendants asserted their responses to discovery in connection with the previous motion were sufficient and their answers should have been restored. A different judge was assigned the motions.

The court held oral argument on the cross-motions. On June 12, the court denied defendants' motion to vacate default and reinstate their responsive pleadings and granted plaintiffs' motion to suppress Errico's pleadings with prejudice. At this point, both 78 Summit and Errico's responsive pleadings had been suppressed with prejudice and default had been entered against 78 Summit.

---

[2] The June 12 order stated 78 Summit was already found to be in default in December 2023 and, as such, the plaintiffs' motion against it was denied as moot.

Following our grant of defendants' motion for leave to appeal, the court submitted an amplification of its June 12 orders pursuant to Rule 2:5-1(b). The court highlighted the relevant procedural history and summarized the prior rulings of the several judges who had been assigned the matter. Notably, the court highlighted that all previous judges found defendants to be non-compliant with their discovery obligations. Ultimately, the court's amplification concluded:

> [A prior judge] was explicit about what defendants had to do to have their answers restored. They were not compliant. Instead of filing a Motion for Reconsideration of [the prior judge's] decision, they waited for almost three months to file the motion again. In an almost four-year old case, the only paper discovery provided by [d]efendants relating to their years long ownership of a residential apartment complex were tax returns. They did not provide bank statement[s], leases, correspondence. . . . Having failed to provide the requested information and having done nothing to cure the defects noted by [the prior judge], th[e] proper remedy was to grant [p]laintiffs' [m]otion to [s]uppress with [p]rejudice and deny [d]efendants' [m]otion to [r]einstate.

On appeal, defendants argue the suppressing of their responsive pleadings with prejudice and the denial of their motions to reinstate the pleadings set forth in the June 12 orders should be vacated. Defendants argue the entry of the June 12 orders which respectively suppressed their responsive pleadings with

prejudice and denied their motions to reinstate were an abuse of discretion because they had "complied with [the prior judge's] directives on what was required to satisfy the 'punch list' of contested discovery" as required by the trial court. We disagree.

II.

We turn to the principles which guide our analysis. Under Rule 4:23-5, a dismissal of a party's pleadings for failure to provide discovery follows a two-step process. St. James AME Dev. Corp. v. City of Jersey City, 403 N.J. Super. 480, 484 (App. Div. 2008). First, the aggrieved party may move for dismissal without prejudice for non-compliance with discovery obligations. R. 4:23-5(a)(1). Upon providing full and responsive discovery, the delinquent party may move to vacate the dismissal without prejudice "at any time before the entry of an order of dismissal . . . with prejudice." Ibid. Second, if a delinquent party fails to cure its discovery delinquency, then "the party entitled to discovery may, after the expiration of 60 days from the date of the order, move on notice for an order of dismissal . . . with prejudice." R. 4:23-5(a)(2). The court shall grant the motion "unless a motion to vacate the previously entered order of dismissal . . . without prejudice has been filed by the delinquent party and either the

demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated." Ibid.

Rule 4:23-5(a) advances two objectives:  (1) to compel discovery, thereby promoting resolution of disputes on the merits, and (2) to afford the aggrieved party the right to seek final resolution through dismissal.  See St. James AME Dev. Corp., 403 N.J. Super. at 484.  It is well-established that suppressing pleadings for failure to comply with discovery orders is the "last and least favorable option" available to a court, Il Grande v. DiBenedetto, 366 N.J. Super. 597, 624 (App. Div. 2004), but "a party invites this extreme sanction by deliberately pursuing a course that thwarts persistent efforts to obtain the necessary facts." Abtrax Pharms. v. Elkins-Sin, 139 N.J. 499, 517 (1995).  In addition, our court rules permit the imposition of sanctions for failing to comply with a court order compelling discovery, including suppression of a responsive pleading with prejudice.  See R. 4:23-2(b)(3).

Our standard of review of a trial court's decision related to our discovery rules is limited.  "A trial court has inherent discretionary power to impose sanctions for failure to make discovery, subject only to the requirement that [the decision] be just and reasonable in the circumstances." Calabrese v. Trenton State College, 162 N.J. Super. 145, 151-52 (App. Div. 1978).

A-3777-23

"The decision to deny a motion to reinstate a [pleading] dismissed for failure to provide discovery lies within the discretion of the motion judge." A&M Farm & Garden Ctr. v. Am. Sprinkler Mech., L.L.C., 423 N.J. Super. 528, 534 (App. Div. 2012) (citations omitted). We should "decline[] to interfere with [such] matters of discretion unless it appears that an injustice has been done." Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 93 (2008) (alterations in original). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Based upon our review of the record, we discern no abuse of discretion by the trial court in denying defendants' motion to reinstate their pleadings and granting plaintiffs' motion to suppress defendants' responsive pleadings with prejudice. Defendants were provided detailed directions and several opportunities by the trial court to provide fully responsive answers to plaintiffs' discovery requests. They were also provided additional time to respond to the "punch list" pursuant to the court's November 9, 2023 case management order.

14

Defendants argue their answers to the "punch list" were fully responsive and the trial court should have denied plaintiffs' motion and granted their motion to reinstate their responsive pleadings. We are unpersuaded. Defendants were given well-defined directives from the trial court concerning the conditions necessary for their responsive pleadings to be reinstated. At the trial court's March 6, 2024 hearing, it was made clear that the only paper discovery provided by defendants were tax returns, which the court pointed out, "do not reflect payments or reimbursements made by an LLC" and therefore was "not even a proper answer." We agree.

In addition, after our review of defendants' amended responses to the "punch list" provided in the record, we note they responded to nineteen of twenty-seven questions, or seventy percent, with either an objection, "no records," "not to my knowledge," "no knowledge," or "none." These requests were related to their financial information, bank accounts, bank statements, payment records, employee information, and record keeping practices. Plaintiffs' request to identify the addresses or information known by certain named employees of defendants were answered as either "no contact" or "no knowledge [of the individual.]" Defendants failed to answer questions pertaining to communications or records/documents regarding prior repairs of

the property, stating that "none exists." As to the request to provide information concerning their record keeping practices, defendants answered all five questions with either an objection or "not to my knowledge." Despite these responses, defendants also claimed in their reply that none of its records pertaining to the property were ever "lost, deleted or destroyed."

The record also shows that defendants failed to identify the "superintendent" who was responsible for communicating with tenants and failed to certify the documents they possessed relating to inspections at the property plaintiffs obtained through their OPRA request. Defendants also failed to abide by the trial court's directive to retrieve the bank records, instead providing a response which astoundingly represented they did not know the identity or location of the banks or financial institutions 78 Summit used during its operation. Their representation that "after a search of all electronic and hard copy records and contacting three possible banking institutions" they still were unable to locate the records is unpersuasive and, frankly, has no logical basis. We deem the notion that defendants did not know the name of the financial institution or location where their bank accounts were held as incredulous when considering the property has seventeen residential rental units and was sold to plaintiffs for approximately five million dollars. We further emphasize the

16

record reflects a total void of any information from approximately 2014 through 2019 despite defendants operating the property by collecting rents and paying costs through some form of operating account.

We conclude the trial court meticulously followed the requirements of Rule 4:23-5(a). The court even provided guidance and directions to defendants on how to respond to the discovery requests, afforded additional time on several occasions in order for defendants to fully respond to discovery and set out the "punch list" to assist in delineating any outstanding discovery before granting the motions to suppress with prejudice. We agree with the court that defendants' answers to discovery were insufficient or not fully responsive as required by Rule 4:23-5(b) to support reinstatement of their responsive pleadings.

We also conclude the trial court's reliance on Rule 4:23-2(b) which authorizes the imposition of sanctions, including the suppression of a party's pleadings with prejudice, for failing to comply with a court order was also appropriate in this instance. The court issued several enforcement orders for defendants to provide discovery throughout the approximate three-year discovery enforcement odyssey. We note the record included orders to compel discovery or setting due dates for discovery on April 14, 2023, September 8, 2023, and the case management order of November 9, 2023 requiring defendants

A-3777-23

to respond to the "punch list" in a time certain. We further note the court's December 22, 2024 order striking Errico's responsive pleadings with prejudice was based on her failure to provide discovery and also because the responses she gave at her deposition were "evasive." Under these circumstances, we conclude the trial court's ultimate sanction of suppressing defendants' responsive pleadings with prejudice was warranted.

To the extent we have not addressed any of defendants' remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18